UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| GEORGE ASSAD, Derivatively on Behalf of Nominal Defendant COMPASS MINERALS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> KEVIN S. CRUTCHFIELD, EDWARD C. DOWLING, JR., LORIN CRENSHAW, JAMES STANDEN, JENNY HOOD, RICHARD P. DEALY, GARETH T. JOYCE, MELISSA M. MILLER, JOSEPH E. REECE, SHANE T. WAGNON, and LORI A. WALKER, <br><br> Defendants, <br><br> and <br><br> COMPASS MINERALS INTERNATIONAL, INC., <br><br> Nominal Defendant. | Case No. 2:25-cv-2186 <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff George Assad ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of Nominal Defendant, Compass Minerals International, Inc. ("Compass Minerals" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' breaches of fiduciary duties and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Compass Minerals with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst

1

reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

I.      **NATURE AND SUMMARY OF THE ACTION**

1.      Compass Minerals is a provider of essential minerals. Its Salt segment provides salt for highway deicing during winter weather, as well as other salt-based products for food preparation and other consumer, industrial, chemical, and agricultural applications. Its Plant Nutrition segment produces and markets sulfate of potash specialty fertilizer. In May 2023, the Company acquired Fortress North America, LLC ("Fortress"), which was developing long-term fire retardant solutions to help combat wildfires.

2.      Unbeknownst to stockholders, the Fortress retardant formed a thick, congealed substance when it came in contact with even trace amounts of Phos-Chek, which is the only other retardant on the market. This comingling problem caused the substance to become highly corrosive to aircraft.

3.      The truth emerged on March 25, 2024 when Compass Minerals revealed that testing had found significant corrosion of the airtankers that had carried Fortress retardant. As a result, the United States Forest Service, which controlled the marketable retardant, would not enter a contract for future use. On this news, the Company's stock price fell 17%.

4.      The foregoing disclosures precipitated the filing of a securities class action against Compass and certain of its current and former executives, captioned *Valentine v. Compass Minerals International, Inc., et al.*, Case No. 2:24-cv-02165 (D. Kan.) (the "Securities Class Action").

5.      Plaintiff did not make a litigation demand prior to filing this action because such action would have been futile based upon the composition of the Board and the actions taken by the Board, as alleged herein.

## II.     JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because: (i) Compass Minerals is headquartered in this District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in this jurisdiction; and (iii) the Individual Defendants (defined herein) have received substantial compensation in this District by doing business here and engaging in numerous activities that have had an effect in this District.

## III.    PARTIES

**Plaintiff**

8.      Plaintiff George Assad has continuously owned shares of Compass Minerals stock during the wrongdoing alleged herein and continues to do so.

**Nominal Defendant**

9.      Nominal Defendant Compass Minerals is a Delaware corporation with its principal executive offices located at 9900 West 109th Street, Suite 100, Overland Park, Kansas 66210.  Its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CMP."

**Defendants**

10. Defendant Kevin S. Crutchfield ("Crutchfield") served as the Company's Chief Executive Officer ("CEO"), President, and a director from May 2019 to January 17, 2024.

11. Defendant Edward C. Dowling, Jr. ("Dowling") has served as the Company's CEO since January 18, 2024 and as a director since 2022.

12. Defendant Lorin Crenshaw ("Crenshaw") served as the Company's Chief Financial Officer ("CFO") from December 2021 to June 7, 2024.

13. Defendant James Standen ("Standen") served as the Company's CFO from 2017 to December 2021 and as Chief Commercial Officer from December 2021 to January 16, 2024.

14. Defendant Jenny Hood ("Hood") was the head of fire retardants since August 2023 and has served as Chief Supply Chain Officer since January 2024.

15. Defendant Richard P. Dealy ("Dealy") has served as a director of the Company since 2022.

16. Defendant Gareth T. Joyce ("Joyce") has served as a director of the Company since 2021.

17. Defendant Melissa M. Miller ("Miller") has served as a director of the Company since 2022.

18. Defendant Joseph E. Reece ("Reece") has served as a director of the Company since 2019.

19. Defendant Shane T. Wagnon ("Wagnon") has served as a director of the Company since 2022.

20. Defendant Lori A. Walker ("Walker") has served as a director of the Company since 2015.

4

21.     Defendants Crutchfield, Dowling, Crenshaw, Standen, Hood, Dealy, Joyce, Miller, Reece, Wagnon, and Walker are sometimes referred to hereinafter as the "Individual Defendants."

## IV.    DUTIES OF THE INDIVIDUAL DEFENDANTS

22.     By reason of their positions as officers, directors, and/or fiduciaries of Compass Minerals and because of their ability to control the business and corporate affairs of Compass Minerals, at all relevant times, the Individual Defendants owed Compass Minerals and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Compass Minerals in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of Compass Minerals and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Compass Minerals and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

23.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Compass Minerals, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Compass Minerals, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

24.     To discharge their duties, the officers and directors of Compass Minerals were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Compass Minerals were required to, among other things:

      a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

      b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

      c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

      d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.   SUBSTANTIVE ALLEGATIONS

### A.   Background

25. Compass Minerals is a provider of essential minerals. Its Salt segment provides salt for highway deicing during winter weather, as well as other salt-based products for food preparation and other consumer, industrial, chemical, and agricultural applications. Its Plant Nutrition segment produces and markets sulfate of potash specialty fertilizer.

26. In May 2023, the Company acquired Fortress North America, LLC ("Fortress"), which was developing long-term fire retardant solutions to help combat wildfires. This acquisition followed an initial investment of $5 million in 2020 and an acquisition of 45% interest in Fortress for $45 million in November 2021.

27. Long-term retardants slow the advance of fire even after the water originally contained in the retardants has evaporated.

28. The United States Fire Service ("USFS"), which buys the vast majority of retardant, has used a product called Phos-Chek for decades. The active ingredient in Phos-Chek is ammonium phosphate.

6

29. Fortress developed a retardant using magnesium chloride, which is the same compound commonly used to salt roads in the winter. The company aimed to neutralize the compound's inherent corrosive qualities by adding inhibitors. These retardants passed USFS's initial laboratory testing, but in the field evaluation in summer 2021, Fortress retardants formed a thick, congealed substance when it came into contact with even trace amounts of Phos-Chek, and it was highly corrosive. This comingling problem was documented in a detailed report in September 2021, which Compass management received.

30. USFS approved Fortress retardants for use and, in May 2023, amended its existing contract to permit Fortress to conduct specialized testing to determine if the substances could be safely integrated, a protocol called integrated operational field evaluation (I-OFE) in mid- to late 2023.

B. **Individual Defendants Caused the Company to Issue Materially Misleading Statements**

31. On February 8, 2023, the Company held an earnings call in connection with first quarter 2023 financial results. During the call, analysts inquired about the adoption of Fortress retardants in light of the comingling issue. Defendant Standen replied:

> So comingling is what you're referring to when you perhaps have an aircraft that's going from one base to another and would be using our product after having used Perimeter's product. ***There are standard protocols around how to rinse the tank, how to prevent any issues. I'd first like to mention the Fortress products have passed with flying colors, any corrosion testing. So that's a non-issue. When you have some comingling, you end up with some residue in a tank. So it's simply a rinse process and a reload. So we don't view it as an issue. We think it's very, very manageable by base operations for tankers coming into competitor bases and competitor tankers coming into Fortress bases. So very manageable. And we're on the QPL and we've passed all the tests, so it should not be an issue.***

32. One day after the amendment with USFS was signed, on May 9, 2023, Compass Minerals announced its purchase of the remaining interest in Fortress. Specifically, it stated, in relevant part:

7

>   In December 2022, Fortress became the first new company in over two decades to have long-term aerial fire retardants added to the U.S. Forest Service's (USFS) Qualified Product List (QPL). ***Fortress' FR-100 Powder and FR-200 Liquid Concentrate products met and exceeded the USFS' rigorous testing criteria in such categories as environmental effects and toxicity to aquatic and mammalian species, corrosion on a variety of aircraft metals, burn retardation efficacy and other qualifiers*** (e.g., long-term storability, acceptable viscosity and pumpability) and finally the completion of a live wildfire operational field evaluation. ***In May of 2023, Fortress entered into a contract with the USFS whereby Fortress will provide up to five mobile-deployed fire retardant air tanker bases, utilizing Fortress' newly designed, state-of-the-art mixing units. These units are expected to be deployed to air bases where Fortress will supply product and attendant services for the 2023 fire season***.

33.     On May 10, 2023, the Company held an earnings call in connection with its second quarter 2023 financial results. During the call, analysts inquired whether the Fortress retardants will "receive some kind of active monitoring to continue to compare and contrast with the competitive product." Defendant Crutchfield replied:

>   ***So the product efficacy is defined, established, and that's actually what gets us on the QPL as well as the environmental benefits, etc. So there is not. This is a process where we are ramping up kind of five mobile retardant bases through the summer to various locations. We're currently working on that operational plan now with the expectation that the first base deploys in June and then ramps up through the season. And it'll be working, the bases will be in similar locations to the incumbent. And able to operate at the same time at the same places throughout the season***.

34.     On August 9, 2023, the Company held an earnings call in connection with its third quarter 2023 financial results. In his prepared remarks, Defendant Crutchfield stated, in relevant part:

>   Changing gears to our other primary growth opportunity, I'm pleased to be able to share some exciting updates with regard to Fortress. As we announced last quarter, we acquired the outstanding 55% in Fortress in May of this year, bringing our ownership stake to 100%. ***This occurred shortly after they signed a supply agreement with the U.S. Forest Service. Using their advanced mobile units, Fortress is supporting up to five air tanker bases with product and associated services this 2023 fire season. In June, Fortress began dropping product at an Arizona Air Base, marking Fortress' first commercial sales since being added to the Forest Service qualified product list in late '22.*** As expected, the feedback

> we've received regarding both the performance of the products and the execution by the Fortress team has been extremely positive.
>
> Subject to quarter end, we were working on three additional assigned bases. One in Montana, one in Washington State, and the U.S. Forest Service base in California. ***In fact, the U.S. Forest Service recently deployed an aircraft out of a base in San Bernardino, California, to drop Fortress products on the Rabbit fire in Riverside County marking our first drops in California***. Most recently, Fortress has been active in combating fires in the Mojave Desert.
>
> ***The team at Fortress continues to work on its next generation of products. FR-105 will eventually replace FR-100 as the company's primary powder retardant offering. We expect that it will deliver improvements with regard to visibility, environmental impact. FR-105 is undergoing the continuation of operational field evaluation that began in '22 and today has dropped approximately 65% of the required 200,000 gallons. We're well on our way to completing the required OFE volume this summer. Looking ahead, we're currently in discussions with U.S. Forest Service regarding the contract for 2024 and beyond.***

35. On November 17, 2023, the Company held an earnings call in connection with its fourth quarter 2023 financial results. During the call, Defendant Crutchfield stated, in relevant part:

> Fiscal '23 was also an exciting year for our emerging Fire Retardant business. After a rigorous multi-year process, two core Fortress products were added to the US Forest Service qualified product list in December of 2022. ***This opened the door to allow governmental agencies to purchase Fortress' fire retardant products, which were the first new products to enter the market in nearly two decades. Fortress was awarded its first contract in May and we consolidated our ownership of the company shortly thereafter. In June '23, we achieved another milestone when we dropped our first commercial product. The feedback that we've received on the efficacy of the products and the operational performance of the team has been excellent. We're currently in the process of finalizing our contract with US Forest Service for 2024***. We're off to a good start with Fortress and we're excited about the high-margin counter-seasonal growth potential that this business can provide for the Company.

36. On February 8, 2024, the Company held an earnings call in connection with its first quarter 2024 financial results. Though the Individual Defendants had led stockholders to believe that a contract for the 2024 fire season would be finalized by December 2023 or January 2024, Compass Minerals still did not have a contract. Defendant Crenshaw purported to explain:

9

the U.S. Forest Service changed the solicitation contract requirements for the calendar '24 contract and this has resulted in delays in the negotiation and finalization of a contract for the '24 fire season, which starts in the April, May timeframe. We continue to expect to have a finalized contract prior to deployment for the upcoming fire season.

37. The above statements were materially misleading because they failed to disclose that: (1) the Fortress retardant was undergoing further testing prior to widespread adoption; (2) there was a comingling problem with Phos-Chek that precluded widespread adoption of Fortress retardant; (3) the recent drops were part of the testing for corrosion and other comingling problems; (4) the outcome of this further testing would directly determine whether USFS would agree to a contract for the 2024 fire season.

### C.     The Truth Begins to Emerge

38. On March 25, 2024, before the market opened, Compass Minerals announced that the I-OFE inspections found significant corrosion of the airtankers that had carried Fortress retardant and, as a result, the USFS would not enter a contract. Specifically, in a press release, the Company stated, in relevant part:

> Compass Minerals (NYSE: CMP), a leading global provider of essential minerals, today announced that the U.S. Forest Service (USFS) has informed the company *that it will not be entering into a contract for the use of magnesium chloride based aerial fire retardants for the 2024 fire season.*
>
> *During scheduled winter airtanker inspections as part of the USFS' Integrated Operational Field Evaluation (I-OFE), it was discovered that certain airtankers that had flown Fortress North America's (Fortress') proprietary, magnesium chloride-based aerial fire retardants revealed significant signs of corrosion in areas where build-up of the retardant had occurred. The findings from this more extensive inspection raised aircraft safety concerns*, prompting the USFS' decision to inform Compass Minerals on March 22, 2024, that it would be "unable to define the scope and associated terms and conditions of a new contract" with the company until the National Transportation Safety Board (NTSB) and National Institute of Standards and Technology (NIST) conducted a coordinated, independent assessment of the findings.
>
> "While we are disappointed with the findings of the initial inspection, we share the USFS' prioritization of safety above all other factors," said Edward C. Dowling Jr.,

president and CEO. "As we work collaboratively with the USFS, NTSB and NIST on the more detailed assessment to be conducted, we have to assume based on this new information that Fortress' proprietary, magnesium chloride-based aerial fire retardant formulation will not be utilized for the foreseeable future in the fight against wildfires."

39. On this news, the Company's stock price fell $3.00, or 17%, to close at $14.55 per share on March 25, 2024.

40. On May 7, 2024, Compass Minerals announced a $55.6 million impairment charge to write down goodwill and intangible assets as "a result of the uncertainty surrounding the future use of these magnesium chloride-based products" for aerial firefighting.

### D. The Individual Defendants Caused Compass Minerals To Issue A Materially Misleading Proxy Statement

41. On January 29, 2024, Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker caused Compass Minerals to issue a definitive proxy statement soliciting stockholder votes in advance of the special meeting to be held March 5, 2024. These seven Defendants solicited stockholder votes in favor of four management proposals, including the amendment of the Company's 2020 Incentive Award Plan ("2020 Plan") to increase the number of shares available for issuance thereunder by 3 million shares.

42. The proxy stated that the Board had determined Dowling and Wagnon were not independent.

43. According to the proxy, the 2020 Plan was administered by the Compensation Committee:

> The Amended Plan will be administered by the Compensation Committee, which may delegate its duties and responsibilities to committees of our directors or officers, including a committee comprised of a single officer, such as our CEO (referred to collectively as the "plan administrator" below), subject to certain limitations that may be imposed under applicable laws, including Section 16 of the Securities Exchange Act of 1934 (the "Exchange Act"), and stock exchange rules, as applicable. The full Board, acting by a majority of its members in office, will conduct the general administration of the Amended Plan with respect to awards

11

granted to non-employee directors. The plan administrator will have the authority to make all determinations and interpretations under, prescribe all forms for use with, and adopt rules for the administration of, the Amended Plan, subject to its express terms and conditions. The plan administrator will also have the authority to determine which eligible employees, consultants and directors receive awards, grant awards and set the terms and conditions of all awards under the Amended Plan, including any vesting and vesting acceleration provisions, subject to the conditions and limitations in the Amended Plan.

44.     The proxy was materially misleading because in soliciting shareholder votes to increase the number of shares available to compensate the same executives issuing the misleading statements, it omitted to disclose that Compass Minerals faced a substantial risk that the Fortress retardants would not be adopted by the USFS. This information would have been material to shareholders deciding how to vote on the proposal to increase shares available for executive compensation.

45.     On March 8, 2024, the Company filed a Form 8-K with the SEC, disclosing the results from the votes on the proposals contained the proxy. In particular, the amendment to the 2020 Plan was approved. The misleading disclosures were fundamental to the shareholder approval of these proposals. As a result of the misleading statements and omissions, the Company was harmed.

## VI.    DAMAGES TO THE COMPANY

46.     As a direct and proximate result of the Individual Defendants' conduct, Compass Minerals has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

      a.     Any funds paid to settle the Securities Class Action;

      b.     The $55 million charge taken in May 2024; and

      c.     Costs incurred from compensation and benefits paid to Defendants who have breached their duties to Compass Minerals.

47. In addition, Compass Minerals business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

48. The actions complained of herein have irreparably damaged Compass Minerals's corporate image and goodwill. For at least the foreseeable future, Compass Minerals will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Human's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

49. Plaintiff brings this action derivatively in the right and for the benefit of Compass Minerals to redress injuries suffered, and to be suffered, by Compass Minerals as a direct result of the wrongdoing alleged herein. Compass Minerals is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

50. Plaintiff will adequately and fairly represent the interests of Compass Minerals in enforcing and prosecuting its rights.

51. Plaintiff has continuously been a shareholder of Compass Minerals at times relevant to the wrongdoing complained of and is a current Compass Minerals shareholder.

52. When this action was filed, Compass Minerals' Board of Directors consisted of Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, Walker, and non-party director Vance Holtzman. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

53. Dowling is the Company's CEO and therefore is not independent under NYSE listing rules. As an employee, Dowling derived substantially all of his income from his employment with Compass Minerals, thus he could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or his fellow members of management with whom he worked on a day-to-day basis. He presided over the Company during the period that the material information was concealed. As a result, demand is futile to him.

54. Dowling, Joyce, and Walker also served as members of the Environmental, Health, Safety & Sustainability Committee at relevant times. As such they are responsible for the oversight of risk management and monitoring environmental, health, safety, and sustainability matters. In this capacity, Dowling, Joyce, and Walker oversaw the adoption of the Company's fire retardant and would have been aware of the risks to USFS approval but failed to disclose the same. Thus, Dowling, Joyce, and Walker breached their fiduciary duties and are not disinterested, and demand is excused as to them.

55. Dealy, Reece, and Walker also served as members of the Audit Committee at relevant times. As such they are responsible for the integrity of Compass Minerals' financial statements. In their capacities as Audit Committee members, Dealy, Reece, and Walker reviewed and approved the materially misleading statements and allowed them to be disseminated in Celsius' SEC filings and other disclosures. Thus, Dealy, Reece, and Walker breached their fiduciary duties and are not disinterested, and demand is excused as to them.

56. Each of Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker affirmatively solicited the shareholder vote on the 2024 proxy statement. These directors were required to communicate with shareholders in full candor. When asking the shareholders to

14

approve additional shares for incentive compensation of the company's executives, Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker omitted to disclose the material information alleged above. On the basis of their materially misleading proxy solicitation, the shareholders voted in favor of their recommendation, harming the Company. As a result, Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker face a substantial likelihood of liability for violations of Section 14(a) of the Exchange Act.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

57. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58. The Individual Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Compass Minerals's business and affairs, particularly with respect to issues as fundamental as public disclosures.

59. The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Compass Minerals.

60. In breach of their fiduciary duties owed to Compass Minerals, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

61. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report the Company's overall prospects.

15

62. As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Compass Minerals has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## COUNT II

### (Against Defendants Defendants Dowling, Dealy, Joyce, Miller, Reece, Wagnon, and Walker For Violations of Section 14(a) of the Exchange Act)

63. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

64. Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's proxy statement filed on January 29, 2024 violated §14(a) and Rule 14a-9 because it solicited stockholder approval to amend the 2020 Plan.

65. In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

66. The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement. The proxy statement solicited stockholder votes for: (i) director election; (ii) executive compensation; (iii) amendment of the 2020 Plan; and (iv) ratification of the independent auditor. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

67. The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Compass Minerals, demands judgment as follows:

A. Declaring that Plaintiff may maintain this action on behalf of Compass Minerals and that Plaintiff is an adequate representative of the Company;

B. Against all of Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C. Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Compass Minerals;

D. Directing Compass Minerals to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Compass Minerals and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

   i. a proposal to strengthen the Company's controls over financial reporting;

   ii. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

   iii. a proposal to strengthen Compass Minerals's oversight of its disclosure procedures;

   iv. a provision to control insider transactions; and

v.    a provision to permit the stockholders of Compass Minerals to nominate at least three candidates for election to the Board;

E.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Compass Minerals has an effective remedy;

F.    Awarding to Compass Minerals restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by Defendants;

G.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Respectfully Submitted by:

**BEAM-WARD, KRUSE, WILSON & FLETES, LLC**

/s/ Richard S. Fisk
RICHARD S. FISK, KS # 23712
8645 College Boulevard, Suite 250
Overland Park, Kansas 66210
(913) 339-6888/ (913) 339-9653 (Fax)
rfisk@bkwflaw.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, New York 10151
Telephone: (212) 935-7400
bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay

Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
prajesh@glancylaw.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Suite 300
Berwyn, PA 19312
rmaniskas@rmclasslaw.com

*Counsel for Plaintiff George Assad*